**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cameron Gates, | No. CV-25-03627-PHX-SHD |
| Plaintiff, | **AMENDED ORDER** |
| v. | |
| Town of Quartzsite, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Cameron Gates' Application for Leave to Proceed In Forma Pauperis ("IFP"). (Doc. 3.) For the reasons stated below, the Court will grant Gates' application to proceed IFP, and will proceed to screen Gates' Complaint, (Doc. 1), pursuant to 28 U.S.C. § 1915(e)(2). Gates' § 1983 Equal Protection claim against the Town of Quartzsite will be dismissed with leave to amend, and his § 1983 claim against Defendants Kiki Tunnell, Jim Ferguson, and Joseph Estes in their official capacities will be dismissed with prejudice. The remainder of Gates' claims will be allowed to proceed.

## I.    BACKGROUND

On October 1, 2025, Plaintiff Cameron Gates filed the instant Complaint, (Doc. 1), along with an IFP application, (Doc. 3). Gates names as defendants the Town of Quartzsite ("Quartzsite"), along with three individuals in their individual and official capacities (collectively "Defendants"). The three individuals ("Individual Defendants") include Jim Ferguson, the "Town Manager of Quartzsite," and Kiki Tunnell, the "Assistant Town Manager for Quartzsite," whose duties include "administering the personnel system

1   (including hiring authority)"; and Joseph Estes, who was contracted through Pierce

2   Coleman PLLC to serve as "Town Attorney" and who "advise[d] the Council on the

3   selection of the Town Magistrate." (Doc. 1 at 3–4.) Gates asserts claims under 42 U.S.C.

4   § 1981 for racial discrimination in hiring against the Individual Defendants. (Doc. 1 at 28.)

5   He also brings claims under 42 U.S.C. § 1983 for violations of the Equal Protection Clause

6   of the Fourteenth Amendment against the Individual Defendants, in their individual and

7   official capacities, and Quartzsite. (*Id.* at 29–30.)

8       Gates alleges that Defendants intentionally discriminated against him on the basis

9   of race in the hiring process for a Magistrate Judge position, unlawfully denying him

10  employment despite his qualifications. (*Id.* at 28–29.) He further alleges that Quartzsite's

11  policies, customs, or failures in hiring procedures facilitated this discriminatory conduct.

12  (*Id.*) Gates seeks compensatory, nominal, and punitive damages for lost employment

13  opportunities and emotional distress, attorneys' fees and costs, and declaratory and

14  injunctive relief. (*Id.* at 24–31.)

15      According to the Complaint, Gates is a Black male. (*Id.* at 5). On August 10, 2025,

16  he applied for the Magistrate Judge position with Quartzsite. (*Id.*) On September 9, 2025,

17  Gates and Lori Brinkerhoff—a white candidate who was serving as interim magistrate

18  judge—were interviewed for the Magistrate Judge position during a Town Council

19  meeting. (*Id.* at 5–7.) Gates alleges that despite his superior qualifications, Defendants

20  failed to hire him and instead selected Brinkerhoff. (*Id.* at 5.)

21      Gates alleges that the decision to hire Brinkerhoff was made with discriminatory

22  intent, with the advice and knowledge of Town legal counsel, and against a historical

23  backdrop in which Quartzsite has never hired a Black individual as Magistrate Judge. (*Id.*

24  at 6–7.) He claims Defendants "intentionally tried to hide the hiring process because it had

25  historically hand-picked white town magistrate judges." (*Id.* at 12.)

26      Gates alleges that Quartzsite deliberately structured the hiring process to favor the

27  white candidate, Brinkerhoff. (*See id.* at 7.) He claims that by setting the minimum

28  qualification as a high school diploma, Defendants ensured that Brinkerhoff would appear

1  qualified, despite Gates possessing significantly greater education and experience. (*Id.* at

2  7.) Gates asserts that he holds an associate's degree with high distinction and a bachelor's

3  degree, earned cum laude, in Interdisciplinary Studies with concentrations in Criminal

4  Justice and Sociology, while Brinkerhoff possesses only a high school education. (*Id.* at

5  7.) Although Brinkerhoff claims to hold an associate's degree, Gates alleges that her

6  credentials were incomplete or false and that Defendants knew or should have known this

7  fact. (*Id.* at 9–10.)

8      Gates asserts that he fully complied with all hiring requirements by submitting a

9  completed application, references, a detailed resume, and letters of recommendation. (*Id.*

10  at 8–9.) And despite the availability of his references, Gates alleges that none were

11  contacted prior to the hiring vote, while Brinkerhoff was not required to submit references

12  at all. (*Id.* at 9.)

13      Gates also alleges that Defendants attempted to hold his interview in private, failing

14  to advise him of his statutory right under Arizona law to request a public interview, and

15  thereby attempting to mislead him into waiving that right. (*Id.* at 13–14.) After researching

16  his rights and consulting with counsel, Gates asserted his right to a public interview, which

17  was ultimately conducted. (*Id.* at 14.) Defendants did not make a similar attempt to steer

18  Brinkerhoff into a private interview. (*Id.* at 15.) Gates also alleges that during the public

19  interview the mayor made "offensive and racially charged" comments. (*Id.* at 18.)

20      Gates further alleges that during the hiring process, Brinkerhoff received

21  preferential access to professional opportunities, including attendance at a state judicial

22  education conference in Phoenix, which was not offered to Gates. (*Id.* at 16.) He also

23  alleges that Defendants "failed to utilize an application that requested voluntary disclosure

24  of race information as required for federal EEO-4 reporting." (*Id.*)

25      On June 10, 2025, prior to the interviews, several Quartzsite residents publicly

26  expressed concern that Brinkerhoff was underqualified. (*Id.* at 5.) During public comment,

27  a white Quartzsite resident questioned the Town Council regarding Brinkerhoff's outside

28  business interests. (*Id.* at 22.) Gates alleges the Council downplayed the issue, declined

1    to disclose that the business was related to the RV industry, and defended Brinkerhoff's

2    general right to maintain an outside business, despite the significance of that industry to

3    Quartzsite's economy.  (*Id.* at 22–23.)

4        Gates additionally alleges that Defendants treated his personal information

5    differently from Brinkerhoff's.  (*Id.* at 17.)  He claims that his full application packet,

6    including his driver's license number, home address, and other personally identifying

7    information, was posted on Quartzsite's public website as part of the Council meeting

8    agenda.  (*Id.*)  In contrast, Quartzsite redacted or withheld similar personal information

9    from Brinkerhoff's publicly posted materials, posting only her resume and cover letter.

10   (*Id.*)  Gates alleges that this disparate treatment caused him significant fear for his safety

11   and privacy and contributed to his emotional distress.  (*Id.* at 24–25.)

12       Gates also alleges that the Council failed to disclose an apparent conflict of interest

13   involving the Town Attorney, who both advised Defendants on the selection of the

14   Magistrate Judge and regularly appears before the selected magistrate as Quartzsite's

15   prosecutor.  (*Id.* at 23.)  Gates alleges that this undisclosed relationship created the

16   appearance of impropriety and further evidences preferential treatment afforded to

17   Brinkerhoff during the hiring process.  (*Id.*)

18       Finally, Gates alleges that the discriminatory practices observed in Quartzsite are

19   consistent with broader patterns of preferential treatment for white candidates in judicial

20   hiring within Arizona municipalities.  (*Id.* at 21–22.)

21   **II.    IFP APPLICATION**

22       "There is no formula set forth by statute, regulation, or case law to determine when

23   someone is poor enough to earn IFP status."  *Escobedo v. Applebees*, 787 F.3d 1226, 1235

24   (9th Cir. 2015).  "An affidavit in support of an IFP application is sufficient where it alleges

25   that the affiant cannot pay the court costs and still afford the necessities of life."  *Id.* at 1234

26   (citing *Adkins v. E.I. Dupont de Nemours & Co.*, 335 U.S. 331, 339 (1948)).

27       Having reviewed the application to proceed IFP, (Doc. 2), the Court finds Gates

28   cannot pay the court costs and still afford necessities.  Thus, the motion to proceed IFP will

be granted.

## III.    SCREENING THE COMPLAINT

Because Gates is proceeding in this case, the Court must screen his Complaint:

> Congress provided with respect to in forma pauperis cases that a district court "shall dismiss the case at any time if the court determines" that the "allegation of poverty is untrue" or that the "action or appeal" is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  While much of section 1915 outlines how prisoners can file proceedings in forma pauperis, section 1915(e) applies to all in forma pauperis proceedings, not just those filed by prisoners.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  "It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim."  *Id.*  Therefore, this court must dismiss an in forma pauperis complaint if it fails to state a claim or if it is frivolous or malicious.

*Kennedy v. Andrews*, 2005 WL 3358205, at *2 (D. Ariz. 2005).

> "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

*Hairston v. Juarez*, 2023 WL 2468967, at *2 (S.D. Cal. 2023).

## IV.    CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Gates brings a claim under 42 U.S.C. § 1981 against the Individual Defendants alleging racial discrimination in hiring.  (Doc. 1 at 28.)  He also brings a claim under 42 U.S.C. § 1983 against the Individual Defendants, in their individual and official capacities, alleging that Defendants, acting under color of state law, violated his rights under the Equal Protection Clause of the Fourteenth Amendment by intentionally refusing to hire him for the position of Magistrate Judge because of his race.  (Doc. 1 at 29–30.)

When analyzing employment discrimination claims brought under §§ 1981 and 1983, courts apply "the same legal principles as those applicable in a Title VII disparate treatment case."  *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103–04 (9th Cir. 2008) (cleaned up); *see Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).  A plaintiff

1    may establish discriminatory intent through direct or circumstantial evidence

2    demonstrating that a discriminatory reason more likely than not motivated the defendant's

3    conduct and that the plaintiff was adversely affected. *Ballou*, 29 F.4th at 422. Where direct

4    evidence is unavailable, courts apply the burden-shifting framework set forth in *McDonnell*

5    *Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*

6         Under *McDonnell Douglas*, a plaintiff may make out a prima facie case for

7    discrimination in hiring by demonstrating that "(1) he is a member of a protected class; (2)

8    he applied and had the qualifications for the position from which he was rejected; (3) he

9    was denied the position although he was qualified; and (4) Defendant hired someone for

10   the position that was not in Plaintiff's class (or continued considering other applicants with

11   qualifications similar to Plaintiff)." *Memory v. EmployBridge*, 2024 WL 3105906, at *3

12   (D. Ariz. 2024) (citing *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037

13   (9th Cir. 2005)). Once a plaintiff has established a prima facie case, the burden shifts to

14   the defendant to show a legitimate, nondiscriminatory reason for the challenged actions.

15   *See McDonnell Douglas*, 411 U.S. at 802. If the defendant can do so, the burden returns

16   to the plaintiff, who must show that the proffered nondiscriminatory reason is pretextual.

17   *Id.* at 804.

18        Here, Gates is a Black man and thus a member of a protected class. He alleges that

19   he applied for a contract of employment with Quartzsite for the position of Magistrate

20   Judge, that he met the stated qualifications for the position, and that he was not selected.

21   Gates further alleges that Individual Defendants selected a white candidate, Brinkerhoff,

22   who was less qualified, and that he possessed superior educational qualifications compared

23   to the white candidate ultimately selected.

24        He further alleges that Defendants structured and administered the hiring process in

25   a manner that favored Brinkerhoff, including by establishing minimal qualification

26   requirements and selectively enforcing procedural rules. According to the Complaint,

27   Gates's references were not contacted, while Brinkerhoff was not required to submit

28   references at all. Gates also alleges that Defendants attempted to steer him toward a private

1    interview without informing him of his right to request a public interview, whereas no such

2    effort was made with respect to Brinkerhoff.  In addition, Gates alleges that his personal

3    identifying information was publicly disclosed, while comparable information concerning

4    Brinkerhoff was withheld.  Finally, Gates alleges that the hiring decision occurred against

5    a historical backdrop in which Quartzsite has never appointed a Black individual to serve

6    as Magistrate Judge.

7         Gates additionally alleges that the Town Council appointed Brinkerhoff with the

8    knowledge, approval, and participation of Ferguson, Tunnell, and Estes, and that Ferguson

9    and Tunnell exercised authority over the administration of the hiring process, while Estes

10   advised the Council on the Magistrate Judge selection.

11        Accepting these allegations as true and drawing all reasonable inferences in Gates'

12   favor, the Complaint plausibly alleges that the Individual Defendants personally

13   participated in, or caused, the alleged violation of Gates' rights.  Accordingly, Gates states

14   both a cognizable claim under § 1981 against the Individual Defendants and a claim under

15   § 1983 against the Individual Defendants in their individual capacities.  Count One may

16   therefore proceed against the Individual Defendants and Count Two may proceed against

17   the Individual Defendants in their individual capacities.

18        Gates also sues the Individual Defendants in their official capacities.  A suit against

19   a municipal official in his or her official capacity is treated as a suit against the municipality

20   itself.  *Center for Bio-Ethical Reform, Inc. v. Los Angeles, Cnty. Sheriff Dep't*, 533 F.3d

21   780, 799 (9th Cir. 2008).  Because Gates names Quartzsite as a defendant, his § 1983 claims

22   against the Individual Defendants in their official capacities are dismissed.  *See Ogbonnaya*

23   *v. City of Mesa*, 2015 WL 241444, at *3 (D. Ariz. 2015); *Luke v. Abbott*, 954 F.Supp. 202,

24   203 (C.D. Cal. 1997) ("[W]hen both an officer and the local government entity are named

25   in a lawsuit and the officer is named in official capacity only, the officer is a redundant

26   defendant and may be dismissed.").

27   **V.    CLAIM AGAINST QUARTZSITE**

28        Gates also brings a claim under 42 U.S.C. § 1983 against Quartzsite, alleging that

1    Quartzsite, acting under color of state law, violated his rights under the Equal Protection

2    Clause of the Fourteenth Amendment by intentionally refusing to hire him for the position

3    of Magistrate Judge on the basis of his race.

4         A "municipality may not be held liable pursuant to 42 U.S.C. § 1983 for the actions

5    of its subordinates." *United States v. Town of Colorado City*, 935 F.3d 804, 808 (9th Cir.

6    2019). "Instead, to establish municipal liability, a plaintiff must show that a local

7    government's 'policy or custom' led to the plaintiff's injury." *Id.* (citation omitted). In

8    other words, § 1983 only holds municipalities responsible "for their own illegal acts."

9    *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quotation marks omitted). "Establishing

10   municipal liability based on a *Monell* theory of liability is difficult." *Bell v. Williams*, 108

11   F.4th 809, 824 (9th Cir. 2024). The Ninth Circuit has "identified three ways in which a

12   plaintiff can satisfy Monell's policy requirement":

13        (1) when the municipality "acts pursuant to an expressly adopted official
          policy";
14
          (2) when the municipality has a "longstanding practice or custom"; or
15
          (3) when "the individual who committed the constitutional tort was an
16        official with final policy-making authority or such an official ratified a
          subordinate's unconstitutional decision or action and the basis for it."
17

18   *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 734 (9th Cir. 2025) (citation

19   modified).

20        In limited circumstances, a municipality's failure to train its employees may

21   constitute an official policy for purposes of § 1983, but only where the failure amounts to

22   deliberate indifference to the constitutional rights of persons with whom the employees

23   come into contact. *Connick*, 563 U.S. at 61. To sufficiently plead a failure-to-train theory

24   of *Monell* liability, "a plaintiff must include sufficient facts to support a reasonable

25   inference (1) of a constitutional violation; (2) of a municipal training policy that amounts

26   to a deliberate indifference to constitutional rights; and (3) that the constitutional injury

27   would not have resulted if the municipality properly trained their employees." *Benavidez*

28   *v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021).

1    If a municipality is "on actual or constructive notice that a particular omission in

2   their training program causes city employees to violate citizens' constitutional rights, the

3   city may be deemed deliberately indifferent if the policymakers choose to retain that

4   program." *Connick*, 563 U.S. at 61. To that end, a "pattern of similar constitutional

5   violations by untrained employees is ordinarily necessary to demonstrate deliberate

6   indifference for purposes of failure to train." *Id.* at 62 (quotation marks omitted); *see also*

7   *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407–08 (1997) ("[T]he

8   existence of a pattern of tortious conduct by inadequately trained employees may tend to

9   show that the lack of proper training . . . is the moving force behind the plaintiff's injury."

10   (quotation marks omitted)). But ultimately, a plaintiff must "show the need for more or

11   different action is so obvious, and the inadequacy of existing practice so likely to result in

12   the violation of constitutional rights, that the policymakers . . . can reasonably be said to

13   have been deliberately indifferent to the need." *Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84

14   F.4th 807, 829 (9th Cir. 2023) (quotation marks omitted).

15    The Complaint fails to state a *Monell* claim against Quartzsite. Here, Gates alleges

16   that Quartzsite has historically selected white candidates for the Magistrate Judge position

17   and departed from federal EEO-4 procedures. However, Gates alleges no facts showing

18   that his alleged injury was caused by a specific municipal policy or by a custom or practice

19   so longstanding or widespread as to have the force of law. *See City of St. Louis v.*

20   *Praprotnik*, 485 U.S. 112, 127 (1988) (holding a "custom" for purposes of municipal

21   liability is a "widespread practice that, although not authorized by written law or express

22   municipal policy, is so permanent and well settled as to constitute a custom or usage with

23   the force of law"). Nor does he identify a particular official with final policymaking

24   authority who made, ratified, or approved the allegedly discriminatory hiring decision and

25   the basis for it.

26    With respect to the alleged pattern of discriminatory hiring, the Complaint offers

27   only generalized assertions that Quartzsite has never hired a Black Magistrate Judge and

28   has historically "hand-picked" white candidates. These conclusory allegations amount to

1   little more than a claim that Quartzsite maintains a policy of discrimination.   Such

2   assertions, without specific factual allegations, are insufficient to plausibly allege a

3   municipal custom or practice under *Monell*.  *See Brown v. Contra Costa Cnty.*, 2014 WL

4   1347680, *8–9 (N.D. Cal. 2014) (dismissing *Monell* claim for failure to plausibly allege a

5   county policy or custom where plaintiff offered only conclusory assertions of a "pattern

6   and practice" of racial discrimination and failed to plead facts showing a longstanding or

7   widespread practice with the force of law).

8          To the extent Gates attempts to premise *Monell* liability on Quartzsite's alleged

9   failure to follow EEO-4 procedures, the Complaint likewise falls short.  This allegation

10  could be construed as a claim based on Quartzsite's failure to implement a procedural

11  safeguard or to train employees.  However, to support Monell liability on a failure-to-train

12  theory, Gates must allege facts showing that (1) a constitutional violation occurred; (2)

13  Quartzsite had a training or procedural policy amounting to deliberate indifference to

14  constitutional rights; and (3) the constitutional injury would not have occurred if Quartzsite

15  had properly trained its employees.  *Connick*, 563 U.S. at 61; *Benavidez*, 993 F. 3d at 1153–

16  54.  The Complaint does not allege facts demonstrating deliberate indifference, a pattern

17  of similar violations, or a direct link between any failure to follow EEO-4 procedures and

18  Gates' alleged harm.  Accordingly, Gates has failed to state a cognizable *Monell* claim

19  against Quartzsite.

20         Unless the Court determines that a pleading cannot be cured by the allegation of

21  other facts, a pro se litigant is entitled to an opportunity to amend a complaint.  *See Lopez*

22  *v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).  A finding that any amendment

23  would be futile justifies dismissal without leave to amend.  *Bonin v. Calderon*, 59 F.3d

24  815, 845 (1995).  Here, the Court cannot conclude that amendment would be futile as Gates

25  could allege additional facts that would state a claim for relief.  Accordingly, Gates will be

26  granted the opportunity to amend his *Monell* claim against Quartzsite.  Gates is advised

27  that an amended complaint supersedes the original complaint.  *Ferdik v. Bonzelet*, 963 F.2d

28  1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542,

1  1546 (9th Cir. 1990).    Thus, after amendment, the original complaint is treated as

2  nonexistent. *Ferdik*, 963 F.2d at 1262.  Any cause of action raised in the original complaint

3  is waived if it is not alleged in an amended complaint.  *See Lacey v. Maricopa County*, 693

4  F.3d 896, 928 (9th Cir. 2012) (en banc).  And any Defendant not renamed in an amended

5  complaint will remain dismissed from this case.  *See id.*

6  **VI.    ATTORNEY REPRESENTATION**

7         For purposes of this order, Gates is proceeding pro se.  An attorney who has not

8  entered an appearance in this matter contacted chambers by telephone and email regarding

9  the status of Gates' application to proceed IFP.  Attorneys may not communicate with the

10  Court or court staff on behalf of a litigant without first filing a notice of appearance.

11  Additionally, any attorney assisting him who has not entered an appearance may not file

12  documents, sign pleadings, appear in court, or communicate with the Court on his behalf.

13         Gates is further cautioned that preparation of filings by an attorney who has not

14  entered an appearance, referred to as ghostwriting, is disfavored and improper because it

15  can disadvantage the opposing party, evade Rule 11 obligations, and mislead the Court

16  regarding the true author of filings.  *See Flynn v. Love*, 2023 WL 2561158, at *4 (D. Nev.

17  2023).

18         Accordingly,

19         **IT IS ORDERED granting** Gates' application for leave to proceed in forma

20  pauperis, without prepayment of costs or fees or the necessity of giving security therefore

21  (Doc. 3).

22         **IT IS FURTHER ORDERED** dismissing without prejudice Gates' § 1983 Equal

23  Protection claim against Quartzsite and dismissing with prejudice Gates' § 1983 Equal

24  Protection claim against defendants Kiki Tunnell, Jim Ferguson, and Joseph Estes in their

25  official capacities.

26         **IT IS FURTHER ORDERED** that Gates may file a First Amended Complaint

27  ("FAC") and amend his § 1983 Equal Protection claim against Quartzsite **within 30 days**

28  of the date of this Order.

**IT IS FURTHER ORDERED** that if Gates files a FAC, the Clerk of the Court shall not issue summonses until the Court screens the Amended Complaint and orders service consistent with 28 U.S.C. § 1915(d).

**IT IS FURTHER ORDERED** that if Gates does not file a FAC within 30 days of the date of this Order, the Clerk of Court shall dismiss Quartzsite as a defendant, and the action shall proceed solely on Gates' surviving claims under 42 U.S.C. §§ 1981 and 1983 against defendants Kiki Tunnell, Jim Ferguson, and Joseph Estes in their individual capacities.

**IT IS FURTHER ORDERED** that service of process is stayed pending either the filing and screening of a FAC or the expiration of the amendment deadline, at which time the Court will order service on the remaining defendants as appropriate.

Dated this 5th day of February, 2026.

Honorable Sharad H. Desai
United States District Judge